# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSH AIR SPORTS, LLC, a California Limited Liability Company,<br><br>     Plaintiff,<br><br>  v.<br><br>RDJ GROUP HOLDINGS, LLC, a Virginia Limited Liability Company; RALPH PARK, an individual; JEFF SHIRING, an individual; DAVID SILVERMAN, an individual; and DOES 1–50, inclusive,<br><br>     Defendants. | 1:19-cv-00385-LJO-JLT<br><br>**MEMORANDUM DECISION AND ORDER RE CROSS-DEFENDANTS' MOTIONS TO DISMISS, MOTION TO STRIKE, AND MOTION FOR MORE DEFINITE STATEMENT**<br><br>**ECF Nos. 12–16** |
| RDJ GROUP HOLDINGS, LLC, a Virginia Limited Liability Company; RALPH PARK, an individual; JEFF SHIRING, an individual; DAVID SILVERMAN, an individual; FLIGHT FIT N FUN (BAKERSFIELD) LLC, a Delaware Limited Liability Company,<br><br>     Cross-Complainants,<br><br>  v.<br><br>RUSH AIR SPORTS, LLC; DAVID BYNUM, an individual; and ARCH ADAMS, an individual,<br><br>     Counter and Cross-Defendants. | |

# I. PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Harris to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. Chief District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Chief Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Chief Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the Nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from inside or outside the Eastern District of California.

# II. INTRODUCTION

On June 12, 2019, Counter-Defendant Rush Air Sports, LLC ("Rush Air"), and Cross-Defendants David Bynum and Arch Adams (collectively "Cross-Defendants"), filed three motions to dismiss the counter and cross-complaint of RDJ Group Holdings, LLC ("RDJ"), Ralph Park, Jeff Shiring, David Silverman, and Flight Fit N Fun (Bakersfield) LLC ("Flight Fit N Fun") (collectively "Cross-Complainants"). ECF Nos. 13–15. Cross-Defendants additionally filed a motion to strike portions of the counter and cross-complaint (ECF No. 12) and motion for more definite statement (ECF No. 16).

The Court has determined the three motions to dismiss, motion for more definite statement, and motion to strike are suitable for decision based on the papers under Local Rule 230(g). For the reasons stated below, Cross-Defendants' motions to dismiss are GRANTED in part and DENIED in part with leave to amend.

### III. FACTUAL BACKGROUND

**A.     Negotiations for the Three Trampoline Parks**

In or around February or March 2017, Arch Adams approached RDJ and Flight Fit N Fun regarding the potential sale of three trampoline parks in Bakersfield, California ("Bakersfield Facility"); New Jersey ("New Jersey Facility"); and New York ("New York Facility") (collectively, the "Three Facilities"). ECF No. 7, ¶ 11. Adams is regarded as "an experienced and well-known trampoline expert, trampoline/family entertainment industry insider and businessman." *Id.* ¶ 12. Adams and his trampoline manufacturing business, Fun Spot, "had and have many customers which include competitors of RDJ and Flight Fit N Fun whom Adams and Fun Spot know well and have had long-standing relationships." *Id.* ¶ 13. RDJ learned that Adams sought to divest his US Holdings, which coincided with RDJ's plan to expand its operations in the Northeast and in California. *Id.* ¶ 14. Thus, RDJ and Flight Fit N Fun engaged in discussions with Adams regarding the purchase of the Three Facilities. *Id.* Adams was part-owner of each of the companies that owned the Three Facilities. *Id.*

Cross-Defendant Rush Air owned a trampoline park in Bakersfield, California. *Id.* ¶ 15. Adams owned a membership interest in Rush Air as manager of Waylaid, LLC. *Id.* Cross-Defendant Bynum was the manager of Rush Air in which he also owned a membership interest through two family trusts and a limited partnership. *Id.* ¶ 17.

On October 18, 2017, "Rush Air and its members, including Adams and Bynum, jointly signed and entered into an Asset Purchase Agreement (the 'Bakersfield APA') with the Buying Parties." *Id.* ¶ 19. Simultaneously, "RDJ through its respective subsidiaries and affiliates was also engaged in discussions with the sellers of the New York Facility and New Jersey Facility." *Id.* ¶ 20. Adams was

the principal of each seller. *Id.*

According to the cross-complaint, Adams marketed and solicited the sale of the Three Facilities as a "bundled" transaction. *Id.* ¶ 21. Based on Adams' "vast experience" in the trampoline park industry, Adams was the "main attraction" common to all Three Facilities in which RDJ was interested, "and all parties in the transactions involving the Three Facilities knew that RDJ and its respective subsidiaries and affiliates were buying the Three Facilities because of Adams as a 'bundle' for an agreed-upon common denominator of a multiple of each Facility's Earnings Before Interest, Tax, Depreciation and Amortization ('EBITDA')." *Id.* ¶ 22. The same multiple of EBITDA was agreed upon for the Three Facilities. *Id.* ¶ 23. The RDJ subsidiaries and affiliates entered into three nearly-identical Asset Purchase Agreements on the same date—October 18, 2017—to purchase and acquire the Three Facilities. *Id.* ¶ 24. Cross-Defendants Rush Air, Bynum, and Adams, and "their various and respective selling entities and affiliates . . . made various material and critical warranties and representations which were extremely significant to RDJ and its affiliates (and to RDJ's principals Park, Shiring and Silverman) and upon which said parties relied upon in acquiring the Three Facilities." *Id.* ¶ 25.

**B.      Competing Trampoline Parks Open in New Jersey**

Approximately a week before RDJ and its affiliates closed the deal for the Three Facilities, a competitor opened a trampoline park nearly 11 miles from the New Jersey Facility unbeknownst to RDJ, its affiliates, and Cross-Complainants. *Id.* ¶ 32. Two to three weeks after closing, another competitor opened a trampoline park approximately 13 miles from the New Jersey Facility. *Id.*

Cross-Complainants contend that competition in the trampoline park industry is fierce. *Id.* Unexpected competitors have a significant impact on the value and viability of an ongoing facility. *Id.* ¶ 33. Cross-Complainants emphasize that new or existing competitors near a facility and the number of competitors are material and significant factors in determining acquisition value and the fair and reasonable EBITDA of existing facilities. *Id.* ¶ 33.

Cross-Complainants assert the New Jersey Facility suffered financially and its operations have been adversely affected to the harm and detriment of RDJ, its affiliates, and Cross-Complainants despite their best efforts to mitigate the unanticipated, undisclosed and unknown developments. *Id.* ¶ 34.

Cross-Complainants have sued Adams and Stone individually for breach of contract and breach of warranty, among other claims, in the Superior Court of New Jersey and the Supreme Court of the State of New York. *Id.* ¶¶ 34–35. As far as the Court is aware, litigation is ongoing against Cross-Defendants in New Jersey and New York.

Cross-Complainants allege, "[u]nder the New Jersey APA, the operations of these competitors have had a 'Materially Adverse Effect' on the financial condition, assets, business, and results of the New Jersey Facility." *Id.* ¶ 36. Moreover, "the unexpected presence of these competitors (and their active and aggressive competition) 'has affected the historical operation' of the New Jersey Facility and will 'adversely affect' in the future . . . the business of the New Jersey Facility so that the New Jersey facility will not be able to perform 'in a manner consistent with its historical practices and performance.' Thus, the Selling Parties breached and violated the representations and warranties set forth in the *New Jersey APA*." *Id.* ¶ 37 (emphasis added).

Cross-Complainants allege that breaches of the New Jersey APA also constitute breaches of the Bakersfield APA. ECF No. 23 at 7. Cross-Complainants contend that had they known that two competitors would open trampoline parks near the New Jersey Facility, they would "never have entered into any of the APAs, including the Bakersfield APA, and the contractual condition of simultaneous closing of the three acquisitions could not have been satisfied. *Id.* Additionally, RDJ and its affiliates would have paid a much lesser EBITDA multiple for acquiring the Three Facilities. *Id.*

**C.**     **Relevant Provisions of the New Jersey APA**

In the New Jersey APA, the Seller of the New Jersey Facility was Air Plus Trampoline Sports, Inc ("Air Plus"). Its shareholders are defined as Arch Adams and Kenneth Stone. *Id.*, Ex. B at 6.

4

Article 8.9(a) of the New Jersey APA provides that the laws of the State of New Jersey apply to "contracts made and performed in that state." ECF No. 7-2, Ex. B, ¶ 8.9(a). Article 8.10 of the New Jersey APA states:

> **EACH PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY AGREES TO BE SUBJECT TO, AND HEREBY CONSENTS AND SUBMITS TO, THE JURISDICTION OF, THE COURTS OF THE STATE OF NEW JERSEY AND AGREES THAT ANY ACTION INVOLVING ANY EQUITABLE OR OTHER CLAIM SHALL BE BROUGHT EXCLUSIVELY IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY. IN THE EVENT THAT THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW**
> **JERSEY DOES NOT ACCEPT JURISDICTION OVER ANY SUCH ACTION, EACH PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY AGREES THAT ANY SUCH ACTION THEN SHALL BE BROUGHT EXCLUSIVELY IN THE STATE COURTS OF THE STATE OF NEW JERSEY.**

*Id.* ¶ 8.10 (emphasis in original). The New Jersey APA is substantially similar to the Bakersfield APA. *See generally* ECF No. 7-2.

**D.     The Bakersfield Asset Purchase Agreement**

Article 3 of the Bakersfield APA provides that "Seller and the Members, jointly and severally" made all warranties and representations therein. *Id.* ¶ 26; ECF No. 7-1, Ex. A at 13. Article 6.3(c) of the Bakersfield APA's Conditions Precedent section states the "obligation of [the Selling Parties] to consummate the transactions to be performed by it at the Closing is subject to the satisfaction . . . of each of the following conditions prior to or at the Closing date . . ." including "[t]he simultaneous closing of the purchase of assets by RDJ . . . and their Affiliates from Air Plus Trampoline Sports, Inc. [for the New Jersey Facility] and Current Holdings Group, Inc. [for the New York Facility]." ECF No. 7-1 ¶ 6.3.

The Bakersfield APA contained an integration clause. *Id.* ¶ 8.1. Rush Air and its members also agreed to indemnify the Buyer Group. *Id.* ¶ 7.2(a)–(b). Article 7.2 of the Bakersfield APA states:

> 7.2     <u>Indemnification by Seller and the Members.</u>  Seller and the Members agree to defend, indemnify, and hold harmless, jointly and severally, the Buyer Parties and each of their Affiliates (collectively, the "Buyer Group") (and, to the extent that Seller and the Members are required to . . . indemnify . . . with respect to Losses hereinafter described,

5

their respective officers, directors, managers, members, employees, agents, advisors, representatives, successors and assigns) (each hereinafter referred to individually as a "Buyer Indemnified Person" and collectively as "Buyer Indemnified Persons"), . . . in respect of all Losses resulting from, arising out of, relating to, or caused by . . . (a) any breach of any representation or warranty made by Seller or the Members herein (without taking into account any "knowledge" or "material adverse effect" qualification or other "materiality" qualifications) . . . [or] (b) any breach by Seller of, or failure by Seller to perform, . . . or otherwise fulfill or comply with, any of the covenants, agreements, undertakings or obligations contained in this Agreement.

*Id.* ¶ 7.2(a)–(b) (emphasis omitted).  As noted above, Bynum is the manager of Rush Air.  ECF No. 7-1 at 49.  Arch Adams is the manager of Waylaid, LLC, a member of Rush Air.  ECF No. 15-1 ¶ 10.  Cross-Complainants Park, Shiring, and Silverman "constitute all of the members of RDJ . . . ."  ECF No. 7-1 at A-1.  As part of the Bakersfield APA, Park, Shiring, and Silverman signed as Guarantors from RDJ in favor of Rush Air.  ECF No. 2-1 at 12–18.  Bynum signed the Guaranty as the guaranteed party on behalf of Rush Air Sports.  ECF No. 2-1 at 18.  The Bakersfield APA defines "Contracts" to include guarantees.  ECF No. 7-1 at A-2 ("'Contracts' shall mean all contracts, leases, arrangements, . . . . guarantees . . . commitments or other agreements . . . of Seller") (emphasis omitted).

Article 7.10 of the Bakersfield APA limits the claims the parties could pursue for breaches of the Bakersfield APA:

The indemnification, specific performance, injunctive and other remedies set forth under this Article 7 and Sections 2.5 and 2.8 and elsewhere in this Agreement shall constitute the sole and exclusive remedies of the parties with respect to any matters arising under or relating to this Agreement, excluding any remedy available to any party involving fraud, intentional misconduct or willful breach.

*Id.* ¶ 7.10.

The Bakersfield APA established that California law governed the interpretation, construction, and enforcement of the Bakersfield APA.  *Id.* ¶ 8.9(a).  Like the New Jersey APA, the Bakersfield APA established that any action involving any equitable or other claim arising out of the Bakersfield APA would be subject to suit in the United States District Court for the Eastern District of California or the state courts of California.  *Id.* ¶ 8.10.

6

## E. The Non-Competition and Non-Disclosure Agreements

As part of the Bakersfield APA, Rush Air entered into a Non-Competition and Non-Disclosure Agreement ("NC/NDA") with Bynum. ECF No. 7-1 at 92–99. The NC/NDA provides that Rush Air and Bynum will not, directly or indirectly, solicit or attempt to solicit RDJ and Flight Fit N Fun's employees to terminate their employment with RDJ and Flight Fit N Fun. *Id.* at 94–95.

Cross-Complainants allege that Bynum, individually and on behalf of Rush Air, violated the NC/NDA when he solicited and induced the Bakersfield Facility's employees to terminate their employment, and recruited those employees to work for another company that Bynum managed. *Id.* ¶ 41. Cross-Complainants further allege that at the time of closing for the Bakersfield Facility, Katie Corrigan ("Corrigan") served as General Manager of the Bakersfield Facility. *Id.* ¶ 42. Corrigan served as General Manager until she resigned abruptly in December 5, 2018 to start as a General Manager at Bynum's other business, The BLVD. *Id.* According to Cross-Complainants, Bynum claims Cross-Complainant Ralph Park gave him "consent" to hire Corrigan. *Id.* ¶ 43. Cross-Complainants dispute that Ralph Park consented to Bynum hiring Corrigan. *Id.* Cross-Complainants further allege that Bynum has solicited other Bakersfield Facility employees for potential employment opportunities. *Id.* ¶ 44.

Cross-Complainants also allege that Bynum and Corrigan have disparaged and interfered with the Bakersfield Facility's business and operation. *Id.* ¶ 45. They contend Bynum and Corrigan told third parties that RDJ, Park, Shiring, and Silverman are "engaging in immoral business practices, and abusing and wasting the time of the legal system." *Id.* ¶ 46. They also allege that Bynum and Corrigan have told others that Rush Air was free to open a competing trampoline park because of RDJ's failure to repay amounts due under its promissory note. *Id.* ¶ 47. Thus, Cross-Complainants contend that Bynum's actions in breach of the NC/NDA have directly and negatively impacted the business and operation of the Bakersfield Facility and RDJ's relationships with its employees and business partners. *Id.* ¶ 48.

**F.**    **The Counter and Cross-Claims**

On February 6, 2019, Plaintiff Rush Air filed a complaint in the Fresno County Superior Court against Defendants RDJ Group, Ralph Park, Jeff Shiring, David Silverman, and Does 1–50.  ECF No. 2-1 at 3.  On March 25, 2019, Defendants removed the instant action to this Court.  ECF No. 2.  On April 26, 2019, RDJ Group, Park, Shiring, Silverman, and Flight Fit N Fun filed a counter and cross-complaint against Rush Air, David Bynum, and Arch Adams.  ECF No. 7.  Cross-Complainants assert the following claims against Cross-Defendants:

1. Count One: Breach of Contract for breach of the Bakersfield APA and breach of the Non-Competition and Non-Disclosure Agreements as part of the Bakersfield APA against Rush Air, Bynum, and Adams;

2. Count Two: Unjust Enrichment against Rush Air, Bynum, and Adams;

3. Count Three: Breach of the Implied Covenant of Good Faith and Fair Dealing against Rush Air, Bynum, and Adams;

4. Count Four: Fraudulent Inducement against "Selling Parties[1], particularly including but not limited to Bynum and Adams" (ECF No. 7 ¶ 69); and

5. Count Five: Declaratory Judgment against Rush Air.

**G.**    **The Three Motions to Dismiss**

Rush Air seeks to dismiss the counter and cross-complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure[2] for lack of subject matter jurisdiction due to the parties' forum selection clause in their contract and under Rule 12(b)(6) for Cross-Complainants' claims for: (1) breach of contract; (2) unjust enrichment; (3) violation of the implied covenant of good faith and fair dealing; (4) fraud; and (5) declaratory relief.  ECF No. 13.

---

[1] Cross-Complainants define "Selling Parties" as Rush Air, Bynum, and Adams.  *See* ECF No. 7 ¶ 26.

[2] All subsequent references to the "Rules" are to the Federal Rules of Civil Procedure.

David Bynum seeks to dismiss the counter and cross-complaint under Rule 12(b)(1) for lack of subject matter jurisdiction due to the parties' forum selection clause in their contract and under Rule 12(b)(6) for Cross-Complainants' claims for: (1) breach of contract; (2) unjust enrichment; (3) violation of the covenant of good faith and fair dealing; and (4) fraud. ECF No. 14.

Arch Adams seeks to dismiss the counter and cross-complaint under Rule 12(b)(2) for lack of personal jurisdiction over Mr. Adams and Rule 12(b)(3) for improper venue due to the parties' forum selection clause in their contract. Mr. Adams further moves to dismiss under Rule 12(b)(6) for Cross-Complainants' claims for: (1) breach of contract; (2) unjust enrichment; (3) violation of the covenant of good faith and fair dealing; and (4) fraud. ECF No. 15.

## IV. DISCUSSION

### A.     Personal Jurisdiction Over Arch Adams

Adams argues the Court lacks personal jurisdiction over him. When no federal statute governs personal jurisdiction, the district court applies the law of the forum state. *See Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). The long-arm statute in California is co-extensive with federal standards. *See* Cal. Civ. Code § 410.10. Thus, this Court may exercise personal jurisdiction if doing so comports with federal constitutional due process. *See Panavision*, 141 F.3d at 1320. "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). There are two forms of personal jurisdiction: specific jurisdiction and general jurisdiction.[3] *See Goodyear*

---

[3] The Supreme Court has described the concept of general jurisdiction as an "obsolescing one," noting "general jurisdiction has come to occupy a less dominant place in the contemporary scheme." *See Daimler AG v. Bauman*, 571 U.S. 117, 132–33, 160 n.8 (2014).

*Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal citation and quotation marks omitted).

### 1. <u>Specific Jurisdiction</u>

Specific jurisdiction exists when a case "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). It "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919 (internal quotation marks omitted).

The Ninth Circuit has established three-prong test for analyzing a claim of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). The plaintiff bears the burden of satisfying the first two prongs of the test. *See Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). If the plaintiff succeeds in satisfying the first two prongs, then the burden shifts to the defendant to "present a compelling case" that exercising jurisdiction would not be reasonable. *Schwarzenegger*, 374 F.3d at 802.

"A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's action in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802. "[T]he solicitation of business in the forum state that results in business being transacted or contract negotiations will probably be considered purposeful availment." *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir.

1988); *see also Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986) ("[I]f the defendant directly solicits business in the forum state, the resulting transactions will probably constitute the deliberate transaction of business invoking the benefits of the forum state's laws.").

Adams argues that Cross-Complainants have not satisfied the first two prongs. First, Adams contends that the Court cannot exercise specific jurisdiction over him because Cross-Complainants' only intentional tort claim for fraud in the inducement fails. Adams next contends the Court cannot exercise specific jurisdiction over him because he was not a party to the Bakersfield APA, nor does he have a relationship with the Buyers under the Bakersfield APA or the California forum. Adams states "Plaintiff failed to cite to any authority supporting their claim that the mere act of negotiating a contract is sufficient for a court to exercise jurisdiction over a non-resident defendant." ECF No. 33 at 3.

He characterizes Cross-Complainants' argument as an attempt to "bootstrap Adams into [California] through his interest in Waylaid, LLC, who is not a party to this action." ECF No. 15-1 at 11–12. Under the fiduciary shield doctrine, Adams argues that his mere management of Waylaid, LLC, a party to the contract as a member of Rush Air, does not create sufficient contacts to establish jurisdiction over Adams. *Id.* at 12 (citing case analyzing Arizona court's jurisdiction in *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989)). Moreover, he argues that the debts and obligations of an LLC "do not become the debts, obligations, or other liabilities of a member or manager solely by reason of the member acting as a member or member acting as a manager for the [LLC]." ECF No. 15-1 at 12 (citing Cal. Corp. Code § 17703.04(a)(2) (internal quotations omitted)).

These arguments lack merit. While Adams is correct that California statutes provide some protections to members or managers of LLCs, here, the cross-complaint demonstrates that Adams' actions move beyond the scope of "mere association with a corporation." *See* ECF No. 15-1 at 11–12 (internal citation and quotation marks omitted). For example, the cross-complaint includes allegations that Adams approached Cross-Complainants, including Flight Fit N Fun, which has its principal place of business in Bakersfield, California, about selling three trampoline parks in California, New Jersey,

and New York. ECF No. 7 at ¶¶ 5, 11. According to the cross-complaint, Adams marketed and solicited the parks as a bundle deal. *Id.* ¶ 21. Moreover, Cross-Complainants assert facts regarding Adams' status in the trampoline park industry, which they allege is part of the reason why they moved forward with the contracts. *Id.* Cross-Complainants also contend Adams made various material and critical warranties and representations which were "extremely significant" to Cross-Complainants and upon which the Cross-Complaints relied to acquire the Three Facilities.[4] *Id.* ¶ 25. In sum, the cross-complaint contains allegations showing Adams' conduct during the negotiations for the Three Facilities, including the Bakersfield Facility. *See Sinatra*, 854 F.2d at 1195 ("[T]he solicitation of business in the forum state that results in business being transacted or contract negotiations will probably be considered purposeful availment."). Accordingly, Cross-Complainants have satisfied the first two prongs in alleging Adams purposefully availed himself to the benefits of California.

Next, Adams argues the exercise of personal jurisdiction over him is unreasonable. Courts determine "reasonableness" by analyzing the following factors:

> [1] the extent of purposeful interjection; [2] the burden on the defendant; [3] the extent of conflict with sovereignty of the defendant's state; [4] the forum state's interest in adjudicating the suit; [5] the most efficient judicial resolution of the dispute; [6] the convenience and effectiveness of relief for the plaintiff; and [7] the existence of an alternative forum.

*Sinatra*, 854 F.2d at 1198 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). First, Adams argues it is unreasonable to exercise personal jurisdiction over him for the same reasons discussed above relating to purposeful availment. Second, Adams argues that a ruling requiring him to defend himself in California while there are two pending actions in New Jersey and New York creates a "conflict of sovereignty in allowing three suits to simultaneously be litigated in three separate forums." ECF No. 15-1 at 14. Moreover, Adams argues establishing jurisdiction "unfairly increases the burden of Adams in defending himself in California, deprives him of his negotiated contractual jurisdiction and

---

[4] While this statement, along with other allegations, may be enough for establishing minimum contacts, this is insufficient for the heightened pleading requirement for fraud as discussed later in this Order.

results in an inefficient use of judicial resources." *Id.* Adams contends California has no readily identifiable interest in having this third action proceed. Lastly, "given that the parties to the New Jersey and New York contracts negotiated to have jurisdiction in those forums and to utilize the laws of those states, they cannot claim any specific interest in having the matter proceed in California." *Id.*

Adams has not presented a "compelling case" demonstrating that the Court's exercise of jurisdiction would be unreasonable. *Schwarzenegger*, 374 F.3d at 802. Again, the Court emphasizes Adams' purposeful interjection in California regarding the potential, and eventual, sale of the Three Facilities, including the trampoline park in Bakersfield. *See Sinatra*, 854 F.2d at 1195 ("[T]he solicitation of business in the forum state that results in business being transacted or contract negotiations will probably be considered purposeful availment."). The Court acknowledges Adams' plight in having to litigate in three different states. This argument is unavailing, however, because Adams' decision to seek the benefits and privileges of the State of California also subject him to the jurisdiction of California courts. Third, Adams' argument that requiring him to litigate in three separate forums creates a "conflict of sovereignty" is unpersuasive because Cross-Complainants contend the "New Jersey and New York claims are limited to claims arising under those respective APAs and are limited to damages incurred by the purchasers of the New York and New Jersey Facilities." ECF No. 25 at 11. Therefore, Adams has not met his burden in establishing that the Court's exercise of jurisdiction over him is unreasonable.

In sum, the Court has specific jurisdiction over Adams. Given that the Court has established specific jurisdiction over Adams, the Court need not reach a decision on general jurisdiction. Accordingly, Cross-Defendant Adams' motion to dismiss under Rule 12(b)(2) is DENIED.

**B.**      **Motion to Dismiss for Improper Venue**

Cross-Defendants appear to seek dismissal of the entire cross-complaint under Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(3) for improper venue based on the parties' forum

selection clause. *See* ECF No. 13-1 at 1[5]; ECF No. 14-1 at 13–14[6]; ECF No. 15 at 2.[7]  "Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999).  Generally, subject matter jurisdiction is considered before personal jurisdiction. *Id.* at 583.  "[I]n most instances subject-matter jurisdiction will involve no arduous inquiry.  In such cases, both expedition and sensitivity to state courts' coequal stature should impel the federal court to dispose of that issue first." *Id.* at 587–88.

The Ninth Circuit has held that a motion to dismiss pursuant to a forum selection clause should be treated as a motion to dismiss for improper venue, rather than a motion to dismiss for failure to state a claim. *See Argueta v. Banco Mexicano S.A.*, 87 F.3d 320, 324 (9th Cir. 1996).  Thus, the Court will address Cross-Defendants' argument relating to the forum selection clause under Rule 12(b)(3).  An analysis under Rule 12(b)(3) allows district courts to consider facts outside of the pleadings. *See Argueta*, 87 F.3d at 324.  Nonetheless, the court must draw all reasonable inferences and resolve all factual conflicts in the non-moving party's favor. *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004).

Federal law governs the enforceability of a forum selection clause. *See Argueta*, 87 F.3d at 324. If a court determines that venue is improper, it may dismiss the case, or, if the interests of justice require, the court may transfer the case to any district in which it properly could have been brought.  28 U.S.C. § 1406(a).  The court has discretion on the decision to transfer.  28 U.S.C. § 1404(b); *King v.*

---

[5] "Given, the contractual jurisdiction provision, there is no jurisdiction over any claims arising from [the New Jersey and New York APAs] that would be justiciable in this court."  ECF No. 13-1 at 1.

[6] Seeking to dismiss Counts One, Two, and Three where the New Jersey APA contains "specific forum selection clause[] establishing the only proper forum for those claims in New Jersey . . . ."  ECF No. 14-1 at 13–14.

[7] Adams moved to dismiss "Count One, Count Two, Count Three, and Count Four as against Arch Adams pursuant to FED. R. CIV. P. 12(b)(3) pursuant to the contractual forum selection."  ECF No. 15 at 2 (emphasis in original).

*Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992).

### 1.    Which APA Controls: New Jersey or California?

Here, the contracts contain forum selection clauses, which designate California, New Jersey, and New York state and federal courts for litigation arising out of each of those contracts, respectively. Cross-Defendants assert the New Jersey APA's forum selection clause controls. In contrast, Cross-Complainants argue the Bakersfield APA applies because its counter and cross-claims arise from the Bakersfield APA. While the parties disagree as to which APA controls, neither party has addressed the validity of their chosen forum selection clause.

Before analyzing the enforceability of the forum selection clause or Cross-Complainants' claims, the Court must first assess which APA applies. Here, Cross-Complainants cite a litany of reasons explaining how Cross-Defendants breached the New Jersey APA. They contend that the opening of the two competitor trampoline parks near the New Jersey Facility had a "Materially Adverse Effect" on the financial condition, assets, business and results of the *New Jersey Facility*. ECF No. 7 ¶ 36; ECF No. 23 at 7. The "unexpected presence of these competitors (and their active and aggressive competition)" has, in Cross-Complainants' words, "affected the historical operation" of the New Jersey Facility and will adversely affect the New Jersey Facility's future business. ECF No. 7 ¶ 37. Therefore, as Cross-Complainants contend, the Selling Parties breached and violated the representations and warranties set forth in the *New Jersey APA*." *Id.* (emphasis added).

Cross-Complainants argue that Cross-Defendants' breach of the New Jersey APA also constitutes breach of the Bakersfield APA. *Id.* Cross-Complainants point to the Bakersfield APA's Conditions Precedent, which require the "simultaneous closing of the purchase of assets by RDJ, Holding, Parent, and their Affiliates from Air Plus Trampoline Sports, Inc.[8] and Current Holdings

---

[8] Based on the parties' filings, this appears to be a reference to the New Jersey APA. *See generally* ECF No. 7-2.

Group, Inc."[9]  ECF No. 7-1 at 38; *see generally* ECF Nos. 31–33.

Cross-Complainants contend that had they known about the two competitors planning to open near the New Jersey Facility, they "would never have entered into any of the APAs, including the Bakersfield APA, and the contractual condition of simultaneous closing of the three acquisitions could not have been satisfied."  ECF No. 23 at 7; *see also* ECF No. 7 at 7.  Alternatively, Cross-Complainants "would have paid a much lesser EBITDA multiple for the Three Facilities."  *See id.*

In response, Cross-Defendants argue that nothing in the Bakersfield APA required any of the Cross-Defendants to disclose any facts about the opening of the competing facilities in New Jersey. ECF No. 31 at 7.  Therefore, as Cross-Defendants contend, "nothing in the Bakersfield APA . . . makes a breach of the New Jersey contract actionable."

The Court does not understand how a breach of the New Jersey APA also constitutes a breach of the Bakersfield APA.  Cross-Complainants have not pointed the Court to a provision of the Bakersfield APA that it contends was breached.  The Court has reviewed the Bakersfield APA in its entirety and finds there is no obvious provision implicated by the opening of the New Jersey competitors.  The Court recognizes that the Bakersfield APA, the New Jersey APA, and the New York APA are related to one another, but Cross-Complainants have not directed the Court to a particular section in the Bakersfield APA that would give rise to a breach of contract claim for the opening of competing parks in New Jersey.  Instead, the matters appear to fall within the New Jersey APA's purview.  The New Jersey APA has a forum selection clause designating the United States District Court for the District of New Jersey or the New Jersey state courts as appropriate venues for resolution of any dispute thereunder.  ECF No. 7-2, Ex. B ¶ 8.10.  Thus, the Court must analyze whether the forum selection clause in the New Jersey APA is enforceable.

## 2.    <u>Enforceability of the Forum Selection Clause</u>

---

[9] Based on the parties' filings, this appears to be a reference to the New York APA.  *See generally* ECF No. 7-3.

16

Neither party has addressed the validity of the New Jersey APA's forum selection clause. "A forum selection clause is presumptively valid; the party seeking to avoid a forum selection clause bears a 'heavy burden' to establish a ground" on which a forum selection clause should not be enforced. *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009). There are three circumstances under which enforcement of a forum selection clause would be unreasonable:

> (1) if the inclusion of the clause in the agreement was the product of fraud or overreaching; (2) if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and (3) if enforcement would contravene a strong public policy of the forum in which suit is brought.

*Murphy*, 362 F.3d at 1140 (internal citations and quotation marks omitted). Forum selection clauses are also scrutinized for "fundamental fairness," and may be deemed unfair if inclusion of the clause was motivated by bad faith, or if the party had no notice of the forum provision. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991). "The party challenging the clause bears a 'heavy burden of proof.'" *Murphy*, 362 F.3d at 1140 (quoting *Bremen v. Zapata Off–Shore Co.*, 47 U.S. 1, 17, (1972)).

### a. <u>Fraud or Overreaching</u>

Nothing in the Cross-Complainants' filings demonstrate that the forum selection clauses designating California, New Jersey, and New York as the proper forums to litigate claims arising from those states, respectively, were products of fraud or overreaching. While there are other allegations of fraud in the cross-complaint, none appear to relate to negotiations over provisions in the three contracts. As such, this analysis weighs in favor of enforcing the New Jersey APA forum selection clause.

### b. <u>Deprivation of Cross-Complainants' Day in Court</u>

Cross-Complainants also fail to demonstrate that enforcement of the New Jersey forum selection clause would deprive them of their day in court. As far as the Court is aware, Cross-Complainants are currently having their day in court. ECF No. 23 at 6. Litigation is ongoing in New Jersey relating to the New Jersey Facility. *Id.* Therefore, this analysis favors enforcing the New Jersey APA forum selection clause.

### c. Contravention of Strong Public Policy

The Court sees no strong public policy that would be implicated if it enforces the New Jersey forum selection clause. Based on the parties' filings, there appeared to be sophisticated parties on both sides of the negotiation. Adams is purported to be a trampoline industry insider, Cross-Complainants already operated trampoline parks on the East Coast, and the remaining Cross-Defendants were involved in the trampoline park and family entertainment business. Enforcing the New Jersey APA forum selection clause would not contravene strong public policy principles.

Accordingly, Cross-Complainants' entire breach of contract claim is DISMISSED, except for claims pertaining to breach of the NC/NDA. As a result, Cross-Complainants' claims for breach of the implied covenant of good faith and fair dealing[10] and declaratory relief are also DISMISSED. Cross-Complainants are granted leave to amend. Thus, the Court will next analyze Cross-Complainants' contract claim for breach of the NC/NDA for soliciting the Bakersfield Facility's employees.

## C. Motion to Dismiss for Failure to State a Claim

A motion to dismiss pursuant to Rule 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. Dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A

---

[10] Except where the claim for breach of the implied covenant of good faith and fair dealing is based upon Cross-Defendants' breach of the NC/NDA.

claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions... amount[ing] to nothing more than a 'formulaic recitation of the elements'... are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. "[T]o be entitled to the presumption of truth, allegations in a complaint ... must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In practice, "a complaint...must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of additional facts, a plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

### 1. Breach of the Non-Compete and Non-Disclosure Agreement

Cross-Complainants assert that Rush Air and Bynum[11] breached the NC/NDA in the Bakersfield APA when they solicited the Bakersfield Facility's employees, including Corrigan, to work for Bynum's other businesses. ECF No. 7 ¶¶ 40–45, 55. The NC/NDA Agreement prohibits Seller from "solicit[ing], induc[ing], or attempt[ing] to solicit or induce any employee of the Buyer Parties to terminate his or her employment with such entity." ECF No. 7-1 at 93. In response, Cross-Defendants first argue that a

---

[11] The Cross-Complaint appears to only claim that Rush Air and Bynum breached the NC/NDA. There does not appear to be a claim against Adams for breach of the NC/NDA.

breach of contract claim is not available under the Bakersfield APA.  ECF No. 13-1 at 16; ECF No. 14-1 at 13–14; ECF No. 15-1 at 15–16.  Next, Cross-Defendants aver that Cross-Complainants Park, Shiring, and Silverman fail to state a cause of action because they were not parties to the NC/NDA with Rush Air, Bynum, or Adams.  ECF No. 13-1 at 15; ECF No. 14-1 at 10–11; ECF No. 15-1 at 17.

### a.  The Bakersfield APA's Exclusive Remedy Clause

Cross-Defendants cite Article 7.10 of the Bakersfield APA, which they contend limits Cross-Complainants' ability to pursue a breach of contract claim:

> The indemnification, specific performance, injunctive and other remedies set forth under this Article 7 and Sections 2.5 and 2.8 and elsewhere in this Agreement shall constitute the sole and exclusive remedies of the parties with respect to any matters arising under or relating to this Agreement, *excluding any remedy available to any party involving fraud, intentional misconduct or willful breach*.

*Id.* ¶ 7.10 (emphasis added).  While Cross-Defendants contend that a breach of contract claim is not allowed under the Bakersfield APA, Cross-Defendants forget there is an exception for fraud, intentional misconduct or willful breach.  *See* ECF No. 7-1 ¶ 7.10.

Here, Cross-Complainants allege that Rush Air and Bynum breached the NC/NDA by "solicit[ing] and induc[ing] employees of the Bakersfield Facility to terminate their employment, and recruit[ing] those employees to work for another company managed by Bynum in violation of the [NC/NDA]."  ECF No. 7 ¶ 41.  In particular, Cross-Complainants allege that Corrigan abruptly resigned as General Manager of the Bakersfield Facility and assumed a similar General Manager position at Bynum's other business, The BLVD.  *Id.* ¶ 42.  Cross-complainants assert that Bynum attempted to cover up his wrongful solicitation of employees in violation of the NC/NDA.  *Id.* ¶ 43.  To support this assertion, Cross-Complainants allege that Bynum claimed Park gave him "consent" to hire Corrigan.  *Id.* The allegations show that at the time Bynum and Park spoke in November 2018, Corrigan had already resigned from her position to work for Bynum's business, The BLVD.  *Id.*  Therefore, given the timing, Cross-Complainants state that Park "in no way gave any consent or permission to the hiring of Corrigan to work for The BLVD."  *Id.*

Accepting Cross-Complainants' allegations as true, as the Court must on a motion to dismiss, the Court finds that the allegations of a cover up provide sufficient indications that Cross-Defendants engaged in intentional misconduct and willful breach of the NC/NDA. Intentional misconduct and willful breach are exceptions to the Bakersfield APA's exclusive remedy provision. *See* ECF No. 7-1 ¶ 7.10. Therefore, the Court rejects Cross-Defendants' argument that Article 7.10 of the Bakersfield APA precludes the breach of contract claim relating to the NC/NDA.[12]

### b. Park, Shiring, and Silverman are Parties to the Bakersfield APA

Cross-Defendants argue that Park, Shiring, and Silverman were not parties to the Bakersfield APA and therefore, lack standing to bring a breach of contract claim. In response, Park, Shiring, and Silverman's main argument for standing is grounded in the Bakersfield APA's indemnification provision. *See, e.g.*, ECF No. 24 at 11. Specifically, Cross-Complainants contend that Bynum, Rush Air, and Adams "expressly agreed to indemnify RDJ's affiliates, which include[] Park, Shiring, and Silverman, for 'any breach of any representation or warranty . . . . As RDJ's 'affiliates,' there is no dispute that Park, Shiring, and Silverman are beneficiaries under the Bakersfield APA and have standing . . . ." Neither party has fully addressed whether Park, Shiring, and Silverman can be parties to the Bakersfield APA based on signing as guarantors.

Here, the parties defined "Contracts" in the Bakersfield APA to include guarantees. *See* ECF No. 7-1 at A-2 ("Contracts" shall mean all contracts, leases, arrangements, . . . guarantees . . . commitments or other agreements . . . of Seller") (emphasis omitted). Moreover, case law relating to contract modifications without a guarantor's consent suggests the premise that a main contract and guaranty entered into at the same time constitute an entire contract. "Where a contract and a guaranty of performance thereunder are entered into at the same time, they are properly read and interpreted as an

---

[12] For the same reasons, the Court also rejects Cross-Defendants' argument that Article 7.10 bars Cross-Complainants' claims for breach of the implied covenant of good faith and fair dealing, unjust enrichment, and declaratory relief.

entire contract." *See Boteler v. Conway*, 13 Cal. App. 2d 79, 82 (1936) (holding material modifications to main contract without guarantor's consent exonerated guarantor from obligations because contract and guaranty entered at same time are entire contract); *Hill & Morton, Inc. v. Coughlan*, 214 Cal. App. 2d 545, 549 (1963) (same). Here, Rush Air, RDJ, Flight Family Entertainment Holdings, Flight Fun Park, Flight Fit N Fun (Bakersfield LLC), Members of Rush Air, and David Bynum entered into the Bakersfield APA on October 18, 2017. ECF No. 7-1 at 2. Along with the Bakersfield APA, Park, Shiring, and Silverman signed the Guaranty on October 18, 2017. ECF No. 2-1 at 12–18 ("THIS GUARANTY . . . is made and delivered as of October 18, 2017 by [Park, Silverman, and Shiring]."). Thus, the parties' definition of "Contracts" to include guarantees, in addition to Park, Shiring, and Silverman's signing as Guarantors as part of the Bakersfield APA, supports the conclusion that Park, Shiring, and Silverman are parties to the Bakersfield APA. Therefore, Park, Shiring, and Silverman have standing to raise a breach of contract claim. *See Boteler*, 13 Cal. App. 2d at 82; *Hill & Morton, Inc.*, 214 Cal. App. 2d at 549. In any event, Park, Shiring and Silverman also have the right to be indemnified by Seller and its Members under Section 7.2(a)–(b) of the Bakersfield APA.

### c.   Park, Shiring, and Silverman May be Entitled to Indemnification

Section 7.2(a)–(b) of the Bakersfield APA provides:

> 7.2   Indemnification by Seller and the Members. ***Seller and the Members agree to*** defend, ***indemnify***, and hold harmless, jointly and severally, ***the Buyer Parties and each of their Affiliates*** (collectively, the "Buyer Group") (***and, to the extent that Seller and the Members are required to . . . indemnify . . . with respect to Losses hereinafter described, their respective officers, directors, managers, members, employees, agents, advisors, representatives, successors and assigns***) (each hereinafter referred to individually as a "Buyer Indemnified Person" and collectively as "Buyer Indemnified Persons"), . . . ***in respect of all Losses resulting from, arising out of, relating to, or caused by . . . (a) any breach of any representation or warranty made by Seller or the Members herein (without taking into account any "knowledge" or "material adverse effect" qualification or other "materiality" qualifications) . . . [or] (b) any breach by Seller of, or failure by Seller to perform, . . . or otherwise fulfill or comply with, any of the covenants, agreements, undertakings or obligations contained in this Agreement.***

ECF No. 7-1 ¶ 7.2(a)–(b) (emphasis added). Additionally, Annex A to the Bakersfield APA states

"'Affiliate' shall mean, with respect to any Person, any other Person directly or indirectly controlling, controlled by, or under common Control with such Person." ECF No. 7-1 at A-1. The Guaranty establishes that Park, Shiring, and Silverman "constitute all of the members of RDJ . . . ." ECF No. 2-1 at 12.

Here, Cross-Complainants argue that Park, Shiring, and Silverman are "affiliates" because they are "controlling persons of RDJ." ECF No. 23 at 5; ECF No. 24 at 5; ECF No. 25 at 5. The parties define "affiliate" in the Bakersfield APA somewhat broadly. Assuming the Guaranty is correct and that Park, Shiring, and Silverman "constitute all of the members of RDJ," it is reasonable for the Court to assume that RDJ is under "common Control" of Park, Shiring, and Silverman. *See* ECF No. 2-1 at 12. Thus, the parties' broad definition for "affiliate" supports the conclusion that Park, Shiring, and Silverman may be "affiliates" of RDJ, and therefore, eligible for entitlement under the indemnification provision. Consequently, this provides an alternative basis for rejecting Cross-Defendants' argument that Park, Shiring, and Silverman lack standing to sue under the Bakersfield APA. Cross-Defendants' motions to dismiss Cross-Complainants' breach of contract claims relating to the NC/NDA under the Bakersfield APA are DENIED.

### 2.  Implied Covenant of Good Faith and Fair Dealing

Cross-Defendants seek to dismiss Cross-Complainants' claim for breach of the implied covenant of good faith and fair dealing because there is no "violation of an independent duty arising from principles of tort law."[13]  *See* ECF No. 13-1 at 16–17, 10–11; ECF No. 14-1 at 1, 11–12, 15–16; ECF No. 15-1 at 2, 19. "Breach of the covenant of good faith and fair dealing is nothing more than a cause of action for breach of contract." *Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga*, 175 Cal.

---

[13] Cross-Defendants also argued that claims for the implied covenant of good faith and fair dealing were barred by the Bakersfield APA's exclusive remedy provision and that Park, Shiring, and Silverman are not parties to the Bakersfield APA. For reasons discussed in Section IV.C.1.b. of this Order, the Court rejects Cross-Defendants' arguments.

App. 4th 1306, 1344 (2009). "There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 400 (2000). The implied covenant is "as much a part of the instrument as if [the covenant] were written out." *Comunale v. Traders & General Ins. Co.*, 50 Cal. 2d 654, 662 (1958).

As discussed in Section IV.C.1.a., Cross-Complainants' claim for breach of contract relating to the NC/NDA is still at play because the allegations in the cross-complaint fall within the exceptions to the exclusive remedy provision—namely, the intentional misconduct and willful breach exceptions. Therefore, the dependent claim of the implied covenant of good faith and fair dealing also survives if there are allegations of "bad faith on the part of the accused." *See Sam Kohli Enters., Inc. v. BOC Grp., Inc.*, No. 11-cv-299, 2011 WL 3298902, *5 (S.D. Cal. Aug. 1, 2011). Here, the cross-complaint contains numerous allegations showing that Cross-Defendants acted in bad faith when "Bynum attempted to cover up his wrongful solicitation of employees . . . by claiming that he was given 'consent' to hire Corrigan by Ralph Park," when, as Cross-Complainants assert, Corrigan had already resigned by the time Park spoke with Bynum. ECF No. 7 ¶ 43. Cross-Complainants also allege that Bynum and Corrigan interfered with Cross-Complainants' business, operations, and relationships with its employees and business partners. *See* ECF No. 7 ¶¶ 40–48. Specifically, they contend Bynum and Corrigan told third parties that RDJ, Park, Shiring, and Silverman are "engaging in immoral business practices, and abusing and wasting the time of the legal system." *Id.* ¶ 46. Moreover, Cross-Complainants allege that Bynum and Corrigan have told others that Rush Air was free to open a competing trampoline park because of RDJ's failure to repay amounts due under its promissory note. *Id.* ¶ 47. As explained above, these allegations are sufficient on a motion to dismiss to establish the intentional misconduct and willful breach exceptions to the exclusive remedy provision.

Accordingly, Cross-Defendants' motions to dismiss Cross-Complainants' claim for breach of the implied covenant of good faith and fair dealing relating to the NC/NDA agreement are DENIED.

### 3. **Unjust Enrichment**

Cross-Defendants assert there is no cause of action for unjust enrichment in California because it is merely the "result of a failure to make restitution under circumstances where it is equitable to do so." ECF No. 13-1 at 10; ECF No. 14-1 at 11, 15; ECF No. 15-1 at 18. Cross-Complainants' second cause of action is for "unjust enrichment" which Cross-Defendants urge the Court to dismiss as inconsistent with Cross-Complainants' allegations of an express contract. *See* ECF No. 31 at 2; ECF No. 32 at 2–3; ECF No. 5–6. The parties dispute whether a quasi-contract claim seeking restitution can be pleaded along with an express breach of contract claim, even if pleaded as alternatives under Rule 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

Cross-Complainants' two claims are mutually exclusive for purposes of judgment and awarding damages: "[A]n action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contracting covering the same subject matter." *Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal. App. 4th 194, 203 (1996). "Restitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason." *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004). Nevertheless, the two claims may be pled simultaneously as alternatives. A plaintiff must be precise in pleading these alternative claims. *Compare, e.g.*, *Gerlinger v. Amazon.Com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004) (a quasi-contract claim incorporating by reference an allegation of an express agreement defeats the quasi-contract claim), *with Ball v. Johanns*, No. 07-cv-1190-LKK-DAD, 2008 WL 269069, *3 (E.D. Cal. Jan. 29, 2008) (unjust enrichment claim not barred despite simultaneous claim for breach of contract).

Here, in pleading their quasi-contract claim, Cross-Complainants incorporate by reference <u>all</u> previous allegations which include the allegation of an express, enforceable agreement between the parties; this is fatal to the quasi-contract claim. ECF No. 7 ¶ 57. The facts pled to maintain the alternative claim must support that alternative. This is a very simple and technical pleading defect and

should not be difficult to cure.  Cross-Complainants' alternative claim for unjust enrichment—which is really a quasi-contract claim for restitution—is DISMISSED with leave to amend.  To the extent Cross-Complainants' unjust enrichment claim is premised on their fraud claim, the claim may be subject to dismissal despite amendment.

### 4. <u>Fraudulent Inducement</u>

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting [the] fraud."  Fed. R. Civ. P. 9(b).  This heightened pleading standard requires the party to do more than simply identify a transaction and allege in a conclusory manner that the transaction was fraudulent.  *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in SEC v. Todd*, 642 F.3d 1207, 1216 (9th Cir. 2011).  Rather, the party must set forth in detail "the who, what, when, where, and how" of the alleged fraudulent conduct.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).  The purpose of Rule 9(b) is to protect defendants from factually baseless claims of fraud as much as it is meant to give defendants notice of the claims asserted against them.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  When a party averring fraud fails to meet the heightened pleading standard of Rule 9(b), dismissal of the claim is proper.  *See Vess*, 317 F.3d at 1107 ("A motion to dismiss a complaint or claim 'grounded in fraud' under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim.").

"Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment."  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008).  To the extent that the pleadings can be cured by the allegation of additional facts, the Court will afford the plaintiff leave to amend.  *See Cook*, 911 F.2d at 247.

The Cross-Complaint contains a claim for fraudulent inducement, which is subject to the pleading requirements of Rule 9(b).  Cross-Complainants thinly assert that "Selling Parties, particularly

including but not limited to Bynum and Adams, knew or should have known that one or two competitors opening or preparing to open within a short distance of the New Jersey Facility by or before the closing of the APAs for the Three Facilities, and intentionally did not disclose such facts to the Buying Parties." ECF No. 7 ¶ 69. Cross-Complainants argue that had they known about the opening of the two competing parks in New Jersey, they "would not have entered into the bundled transactions to purchase the three facilities, including the Bakersfield APA, at least not at the agreed upon price." *Id.*

Cross-Complainants further assert that before entering into the APAs, "and in the APAs, Adams and Bynum, as well as their various respective selling entities and affiliates, including Plaintiff Rush Air, made various material and critical warranties and representations which were extremely significant to RDJ and its affiliates (and to RDJ's principals Park, Shiring and Silverman) and upon which said parties relied upon in acquiring the Three Facilities." *Id.* ¶ 25.

It is unclear from Cross-Complainants' filings "the who, what, when, where, and how" of the alleged fraudulent conduct. *See* Vess, 317 F.3d at 1006. Again, it is unclear whether the actions allegedly giving rise to fraud have anything to do with the Bakersfield APA. Assuming there is a connection to the Bakersfield APA, Cross-Complainants need to delineate these claims with particularity under the Rule 9(b) heightened pleading requirements for fraud. Therefore, Cross-Defendants' motions to dismiss Cross-Complainants' fraud claim are GRANTED with leave to amend.

## V. <u>CONCLUSION AND ORDER</u>

For the aforementioned reasons, the Court holds the following:

1. Adams' motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction is DENIED;

2. Cross-Defendants' motions to dismiss under Rule 12(b)(3) for improper venue are GRANTED with leave to amend;

3. Cross-Defendants' motions to dismiss under Rule 12(b)(6) for the breach of the Bakersfield APA, with the exception of the breach of contract claim regarding the NC/NDA; breach of the

27

implied covenant of good faith and fair dealing as to the Bakersfield APA; unjust enrichment; fraud; and declaratory relief are GRANTED with leave to amend;

4. Cross-Defendants' motions to dismiss under Rule 12(b)(6) for breach of the NC/NDA are DENIED; and

5. Cross-Defendants' motions to dismiss under Rule 12(b)(6) for breach of the implied covenant of good faith and fair dealing with respect to the NC/NDA are DENIED.

Based on the Court's ruling, Cross-Defendants' motion to strike and motion for more definite statement are moot. Cross-Complainants have 21 days to file amended pleadings or file a notice informing the Court that they will not amend. Thereafter, Cross-Defendants shall have 21 days to file responsive pleading(s) or motion(s).

The parties are warned that in the future the Court will not consider duplicative briefing with respect to moving or opposition motion papers – i.e. separate filings repeating the same arguments or statement of facts as to multiple parties. Whenever possible, attorneys should file a single moving or opposing memorandum of points and authorities on behalf of multiple clients and delineate separate arguments or facts as to different plaintiffs or defendants in a consolidated brief with appropriate sections breaks. In addition, where multiple plaintiffs or defendants are represented by different counsel, Counsel are required to meet and confer and file a single consolidated brief if not doing so would amount to duplicative briefing on the same legal issues or facts. The Court will allow separate briefing if and only if the briefing raises separate and distinct issues and may simply state that it joins in an argument already made in a filing by a co-plaintiff or co-defendant.

IT IS SO ORDERED.

Dated:   __October 2, 2019__          _____**/s/ Lawrence J. O'Neill**_____
                                        UNITED STATES CHIEF DISTRICT JUDGE